UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ERIC WILLIE,

                                                                    Docket No.:

                              Plaintiff,

            -against-

COUNTY OF NASSAU, NASSAU COUNTY              **COMPLAINT**
CORRECTIONS OFFICER ROMANO, in his individual
and official capacities, NASSAU COUNTY
CORRECTIONS OFFICER #1640, in his individual and
official capacities, NASSAU COUNTY SHERIFF
ANTHONY J. LAROCCO, in his individual and official      **JURY TRIAL DEMANDED**
capacities, and CORRECTIONS OFFICER JOHN DOES
#1-10 (fictitiously named), in their individual and official
capacities,

                                                    Defendants.
------------------------------------------------------------------------ X

Plaintiff ERIC WILLIE, by his attorneys, Horn Wright, LLP, complaining of Defendants COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONS OFFICER ROMANO, in his individual and official capacities, NASSAU COUNTY CORRECTIONS OFFICER #1640, in his individual and official capacities, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff, ERIC WILLIE ("WILLIE" and/or "Plaintiff") seeks relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONS OFFICER ROMANO, in his individual and official capacities, NASSAU COUNTY CORRECTIONS OFFICER #1640, in his individual and official capacities, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, and

1

CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities (collectively, referred to as "Defendants") for committing acts under color of law and depriving Plaintiff of rights secured under 42 U.S.C. § 1983 grounded in rights secured to him under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and laws of the State of New York.

2.      Plaintiff alleges that Defendants engaged in unlawful conduct. Specifically, during the course of Plaintiff's pre-trial detention at the Nassau County Correctional Center ("NCCC"), Plaintiff was subjected to harassment, assault, battery, and use of excessive force without cause, causing physical harm and extreme pain and suffering in violation of Plaintiff's Constitutional rights.

3.      Defendants NASSAU COUNTY CORRECTIONS OFFICER ROMANO, NASSAU COUNTY CORRECTIONS OFFICER #1640, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), without justification or any reason except an intent to deprive Plaintiff of his rights and knowledge that their conduct had the tacit authorization of COUNTY OF NASSAU, assaulted and battered Plaintiff. Said use of unjustified force on Plaintiff deprived him of his civil and Constitutional rights.

4.      Plaintiff seeks damages, both compensatory and punitive, award of costs, disbursements, interest, attorneys' fees, and such other and further relief as this Court deems just and equitable.

## **<u>JURISDICTION</u>**

5.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred

2

upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

6.    Supplemental jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367(a).

## VENUE

7.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of the individually named Defendants and Doe Officers is within the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York. The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York. Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.    Plaintiff attempted to fulfill the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), requiring inmates to exhaust available, administrative remedies prior to filing suit under 42 U.S.C. § 1983 alleging violations of their Constitutional rights but was denied access to the process and/or prevented from filing such.

## NOTICE OF CLAIM

9.    Plaintiff filed a timely Notice of Claim with the County of Nassau on or about January 21, 2025. More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

10.    On April 9, 2025, Plaintiff WILLIE appeared for an examination pursuant to § 50-h of the New York General Municipal Law.

11. More than thirty days have elapsed since Plaintiff served his Notice of Claim and Defendant COUNTY of NASSAU has not offered adjustment or payment thereof.

## THE PARTIES

12. Plaintiff ERIC WILLIE is a resident of the United States who lives within the Eastern District of New York.

13. Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

14. Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY CORRECTIONS OFFICER ROMANO ("ROMANO") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, ROMANO was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in Nassau County Sheriff's Department ("NCSD") and NCCC, and Defendant NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO.

15. Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY CORRECTIONS OFFICER #1640 ("#1640") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, #1640 was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or

4

control of the supervisors in NCSD and NCCC, and Defendant NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO.

16.     Upon information and belief, at all relevant times described herein, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO ("LAROCCO") was and is the Sheriff of the County of Nassau, acting under color of state law, and is responsible for providing a safe and secure environment for detainees in his custody. LAROCCO is being sued in his individual and official capacities. Defendant LAROCCO is responsible for the day-to-day operations of NCCC. As Sheriff, he has the custody, control, and charge of the NCCC and its inmates. LAROCCO is legally responsible, in whole or in part, for the operation of the NCCC, for the conditions therein, and the health and safety of persons confined or incarcerated therein. As Sheriff, LAROCCO has final policy-making authority for all matters relating to the operation of NCCC, including final policy-making authority and ultimate responsibility for the custody, treatment, control, and care of all persons detained in NCCC. The individuals working at NCCC are Defendant LAROCCO's agents and employees.

17.     Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES") are individuals and employees of COUNTY with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES were acting under color of state law and within the scope of their employment as Corrections Officers and/or Supervisors employed by Defendant COUNTY, and work under the supervision, direction, and/or control of their supervisors in the NCSD and NCCC, and Defendant LAROCCO. They are legally responsible, in whole or in part, for the operation of

5

the NCCC, for the conditions therein, and the health and safety of persons confined or incarcerated therein.

## RELEVANT NON-PARTY

18.     Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, operated, maintained, and controlled the NCSD, including the NCCC and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody.

19.     Upon information and belief, at all relevant times described herein, NCSD, by its agents and/or employees, operated, maintained, and controlled the NCCC and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody.

## FACTUAL ALLEGATIONS

20.     On or about December 21, 2024 and on or about January 11, 2025, and at all times herein mentioned, Plaintiff WILLIE was lodged at the NCCC as a pre-trial detainee under the care and custody of Defendants.

21.     NCCC, located at 100 Carman Avenue, East Meadow, New York, on information, is an agency, subdivision, and/or instrumentality of COUNTY.

22.     On or about December 21, 2024, Plaintiff WILLIE was assaulted, beaten, and battered by ROMANO and/or DOES and was caused to sustain severe and permanent injuries, and was thereafter denied proper medical treatment.

23.     On or about December 21, 2024, Defendant COUNTY was obligated and owed a duty to Plaintiff WILLIE to maintain, manage, operate, and control NCCC, its employees and activities conducted therein and/or by its employees.

6

24.     On or about December 21, 2024, ROMANO, without warning, directives, or just cause, struck Plaintiff in the eye while Plaintiff was shackled and in handcuffs while at or near the holding pens of the Courthouse. Plaintiff WILLIE was compliant at all relevant times and was not a threat nor did WILLIE threaten the use of violence against ROMANO and/or DOES.

25.     After Plaintiff was arraigned, Plaintiff was transported back to NCCC.

26.     Upon arriving at the NCCC, Plaintiff was escorted into the "search area" of the facility and then to the "changing room" in order to be searched and changed out of his street clothing and into his orange NCCC issued clothing.

27.     Once in the search area, Plaintiff was directed to go to the changing room and use the last stall.

28.     The last stall is the area furthest from the door and video cameras.

29.     Upon entering the last stall, Plaintiff saw that ROMANO was present along with #1640 and DOES.

30.     Immediately upon walking into the stall, Plaintiff was punched by ROMANO. Upon being struck, Plaintiff immediately fell to the ground and placed himself in a fetal position.

31.     Upon falling to the ground, Plaintiff was viciously assaulted by ROMANO, #1640, and DOES. Plaintiff was kicked, punched, and stepped on. Plaintiff, after the beating, was also sprayed with Oleoresin Spray ("OC") spray. All while Plaintiff was still handcuffed and shackled.

32.     After the vicious assault at the hands of ROMANO, #1640, and DOES, Plaintiff was picked up from the ground and thrown into a holding pen.

33.     ROMANO, #1640, and DOES were celebrating the vicious attack on Plaintiff. Defendants ROMANO, #1640, and DOES were high fiving each other, laughing, and one of them stated to Plaintiff "Merry Christmas."

7

34. That the aforementioned assaults and beatings continued despite WILLIE's pleas for ROMANO, #1640, and DOES to stop and despite the fact that WILLIE was compliant at all relevant times and was not a threat and/or threatened physical force and/or resisted ROMANO, #1640, and/or DOES.

35. As a result of the vicious assaults and beatings, Plaintiff suffered, on information, broken and fractured bones; bruises; severe pain; psychological anguish; permanent injury; and disability.

36. As a result of Defendants ROMANO, #1640, and DOES' use of unlawful force, WILLIE was caused to suffer extreme and severe pain and discomfort. WILLIE, without justification, was beaten and assaulted by ROMANO, #1640, and DOES.

37. WILLIE complained to ROMANO, #1640, and DOES that he was in pain and needed medical attention and had visible injuries. On each occasion, Plaintiff requested that he be taken to medical.

38. Plaintiff's requests for medical attention were ignored and, despite it being apparent that Plaintiff had suffered serious physical injuries as a result of the actions of ROMANO, #1640, and DOES, Plaintiff was denied medical attention by Defendants.

39. Defendants have a duty to provide competent medical and custodial care to their pre-trial detainees.

40. That Plaintiff sustained the aforesaid injuries wholly and solely due to the unlawful use of force and assault of Defendants, their agents, servants, and/or employees, without Plaintiff in any way contributing thereto.

41.     That Plaintiff sustained the aforesaid injuries wholly and solely due to unlawful use of force and assault by Defendants, their agents, servants, and/or employees, without Plaintiff in any way contributing thereto.

42.     At all relevant times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff and, while these acts were carried out under color of law, Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper, and unrelated to any activity in which Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, and property and/or ensure civil order.

43.     At all relevant times mentioned in this Complaint, Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of Plaintiff; each of the Defendants failed and/or refused to perform that duty and failed and/or refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

44.     That the injuries Plaintiff suffered were caused solely by Defendants' conduct and Plaintiff in no way contributed to or caused the injuries he suffered.

45.     Defendants' conduct was the proximate cause of Plaintiff's injuries.

46.     The injuries suffered by Plaintiff are permanent in nature.

**January 2025 Incident**

47.     NCCC has a history of, *inter alia,* inmate on inmate violence in part due to mismanagement, understaffing, improper inmate classification, improper housing designation, overcrowding, inability to supervise/control gang activity, lack of control over contraband activity,

lack of mental health services, and violating minimum health and safety standards for correctional facilities in the State of New York[1].

48.     On or about January 11, 2025, Plaintiff was a pretrial detainee at NCCC.

49.     On or about January 11, 2025, Plaintiff was at NCCC when, unexpectedly, he was viciously attacked by another inmate. Upon information and belief, there was at least one other attacker but there could have been more.

50.     Plaintiff was attacked with some sort of weapon, and was further punched and kicked, sustaining serious and grave injuries as a result of the attack.

51.     Plaintiff had a visible laceration on his face and was bleeding.

52.     Plaintiff was visibly injured and calling for assistance, but no one came.

53.     Defendant DOES assigned to the area where Plaintiff's assault occurred were not present and/or nowhere to be found.

54.     Plaintiff complained to DOES that he was in pain and needed immediate medical attention.

55.     Plaintiff's requests for medical attention were ignored and, despite it being apparent that Plaintiff had suffered serious physical injuries, Plaintiff was denied medical attention by Defendants.

56.     Defendants have a duty to provide competent medical and custodial care to their pre-trial detainees.

57.     After much complaining, Plaintiff was ultimately taken to the hospital and underwent diagnostic testing.

---

[1]     See     https://www.nytimes.com/2000/09/16/nyregion/14-month-federal-study-denounces-cruel-conditions-at-the-nassau-county-jail.html

58.     As a result of the attack, Plaintiff sustained a laceration and, upon information, a fractured nose.

59.     Prior to the attack occurring, Plaintiff had requested to be moved from this particular housing area due to fear of being attacked. Those requests were ignored by Defendants.

60.     Since this incident, Plaintiff is aware of other individuals who suffered the same and/or similar fate as he did where areas within the facility are left unattended and/or understaffed by Corrections Officers during which time these individual(s) have been assaulted.

61.     That the aforementioned assault and beating occurred despite Plaintiff's pleas for the Corrections Officers to assist and/or protect him.

62.     As a result of the assault and beating, Plaintiff suffered a laceration, multiple scrapes, bruises, severe pain, fracture, psychological anguish, permanent injuries, and disabilities.

63.     At all relevant times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff and, while these acts were carried out under color of law, Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper, and unrelated to any activity in which Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners and property and/or ensure civil order.

64.     At all relevant times mentioned in this Complaint, Defendants had the power and the duty to restrain the other inmates and prevent them from violating the law assaulting and injuring Plaintiff; each of the Defendants failed and/or refused to perform that duty and failed to protect Plaintiff, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

65.    That the injuries Plaintiff suffered were caused solely by the conduct of Defendants, and Plaintiff in no way contributed to or caused the injuries he suffered.

66.    Defendants' intentional, reckless, negligent, or deliberately indifferent behavior caused Plaintiff conscious pain and suffering, permanent physical injuries, and emotional harm.

67.    As a direct and proximate result of the acts of Defendants, the injuries and damages sustained by Plaintiff from the deprivation of his Fourth, Eighth, and Fourteenth Amendment rights.

68.    All the alleged acts, misdeeds and omissions committed by Defendants ROMANO, #1640, and DOES (collectively, the "Individual Defendants") described herein for which liability is claimed were done either intentionally, knowingly, or recklessly, and their proscribed conduct meets all of the standards for imposition of punitive damages.

69.    Defendants' conduct was the proximate cause of Plaintiff's injuries.

70.    The injuries suffered by Plaintiff are permanent in nature.

### COUNT I
### VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR UNREASONABLE AND EXCESSIVE FORCE (§ 1983)
### (*Against Defendants ROMANO, #1640, and DOES*)

71.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

72.    The unlawful assault of Plaintiff by ROMANO, #1640, and DOES at NCCC was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of their employment by NCSD and NCCC.

73.     ROMANO, #1640, and DOES, with willful and malicious intent, using the actual and/or apparent authority of COUNTY and LAROCCO violently assaulted Plaintiff without valid justification for such excessive force.

74.     ROMANO, #1640, and DOES' aforesaid actions constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

75.     ROMANO, #1640, and DOES' actions were intentionally, recklessly, and/or grossly negligently done to intimidate, and did cause Plaintiff physical and emotional distress.

76.     The assaults and batteries of Plaintiff was an abuse of power, constituted a violation of bodily integrity for no legitimate purpose within the meaning of the Fourth, Eighth, and Fourteenth Amendments, constituted a violation of Plaintiff's right to be free from unlawful force while detained pursuant to the Fourth, Eighth, and Fourteenth Amendments, and deprived Plaintiff of his liberty and right to be free from this type of physical attack.

77.     The violation of Plaintiff's bodily integrity was unreasonable and without due process of law, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

78.     As a proximate result of Defendants ROMANO, #1640, and DOES' intentional and malicious actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## COUNT II
## VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)
### (*Against Defendants ROMANO, #1640, and DOES*)

79.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

80.     The harm to Plaintiff was foreseeable and a direct result of ROMANO, #1640, and DOES' conduct in unlawfully assaulting Plaintiff without any legitimate basis or any other lawful justification.

81.     ROMANO, #1640, and DOES acted in conscious disregard of a great risk of serious harm to Plaintiff by unlawfully assaulting him, placing Plaintiff in substantial fear for his life and safety, and causing physical and emotional injuries to Plaintiff.

82.     ROMANO, #1640, and DOES' conduct was intentional, with deliberate indifference, recklessness, and/or gross negligence.

83.     ROMANO, #1640, and DOES' consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiff in a dangerous situation under color of state law that he otherwise would not have been subjected to but for Defendants' conduct.

84.     ROMANO, #1640, and DOES were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiff.

85.     ROMANO, #1640, and DOES used their authority to create an opportunity that otherwise would not have existed for harm to occur.

86.     ROMANO, #1640, and DOES' conduct in unlawfully assaulting Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

14

87.     ROMANO, #1640, and DOES acted intentionally, with wanton or deliberate indifference, recklessness, and/or gross negligence to Plaintiff's rights.

88.     The aforesaid actions of ROMANO, #1640, and DOES constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason, and in violation of Plaintiff's substantive due process rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments.

89.     As a result of ROMANO, #1640, and DOES' willing, wanton, reckless, deliberately indifferent, and grossly negligent conduct, Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated, and he was unlawfully subjected to a dangerous situation directly caused by Defendants' affirmative actions.

90.     As a proximate result of Defendants ROMANO, #1640, and DOES' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### COUNT III
### VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)
### (*Against Defendants ROMANO, #1640, and DOES*)

91.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

15

92. Defendants knew that there was a strong likelihood of harm to Plaintiff, but failed to take reasonable measures to intervene and prevent the unlawful conduct of ROMANO, #1640, and/or DOES, despite having opportunities to do so.

93. Upon information and belief, Defendants were on notice of ROMANO, #1640, and/or DOES' violent propensity to use their status as Corrections Officers to unlawfully inflict harm on the inmates.

94. Defendants knew that ROMANO, #1640, and/or DOES had engaged in this conduct in the past by assaulting inmates, using the actual and/or apparent authority of COUNTY to carry out their violent desires.

95. Upon information and belief, Defendants were on notice of ROMANO, #1640, and/or DOES' violent propensity to use their status as Corrections Officers to further their violent desires.

96. Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter ROMANO, #1640, and/or DOES and/or other Corrections Officers from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

97. Had Defendants intervened to stop the unlawful conduct of ROMANO, #1640, and/or DOES before December 21, 2024, Plaintiff would not have been subjected to the events described herein.

98. As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated.

99. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted,

16

battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT IV**
**FAILURE TO SUPERVISE AND FAILURE TO TRAIN (§ 1983)**
(***Against Defendants COUNTY and LAROCCO***)

100. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

101. The unlawful assaulting of vulnerable inmates by the Corrections Officers, including the Individual Defendants, is and was foreseeable.

102. Defendants COUNTY and LAROCCO were responsible for supervising, overseeing, and controlling their subordinates in NCSD and NCCC, including the Individual Defendants.

103. Defendants COUNTY and LAROCCO had an express and/or implied duty to provide a reasonably safe environment for their inmates, including Plaintiff. At a minimum, they had a duty to keep him from being unlawfully assaulted by their employees, including the Individual Defendants, which was foreseeable based upon their past instances of misconduct, which were known to the senior officers and supervisors in NCSD and NCCC.

104.    In fact, it was well known throughout the community that multiple Corrections Officers, including the Individual Defendants, were using their actual and/or apparent authority to assault vulnerable inmates without reason and without any legal basis.

105.    Despite having this knowledge, Defendants COUNTY and LAROCCO failed to take any remedial measures to prevent foreseeable acts of abuse by Corrections Officers.

106.    The countenancing of this behavior created an environment within NCSD and NCCC wherein Corrections Officers were allowed to continue with their violent behavior, which led to the Constitutional rights of vulnerable citizens being violated for their desires, including Plaintiff.

107.    Defendants COUNTY and LAROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor the Individual Defendants, who had a history of engaging in official misconduct, and failed to implement measures to prevent the Individual Defendants and other Corrections Officers from conspiring with each other to cover up their official misconduct.

108.    Defendants COUNTY and LAROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor the Individual Defendants, and other Corrections Officers, from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual inmates, including Plaintiff.

109.    Defendants COUNTY and LAROCCO negligently hired, retained, and/or supervised the Individual Defendants when they knew or should have known that they posed a threat of abuse to vulnerable inmates.

110.    Defendants COUNTY and LAROCCO knew or should have known of the Individual Defendants' violent propensities for the conduct which caused Plaintiff's injuries, prior

to the occurrence of the injuries, given the knowledge of other instances of abuse that predate December 21, 2024 and January 11, 2025.

111.    Defendants COUNTY and LAROCCO owed a duty of care to all persons, including Plaintiff, who were likely to come under the influence of the Individual Defendants in their roles as Corrections Officers, to ensure that the Individual Defendants did not abuse their authority as Corrections Officers to injure inmates by unlawfully assaulting, battering, and/or otherwise subjecting them to abuse for no lawful reason.

112.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

113.    Upon information and belief, Defendants COUNTY and LAROCCO were aware that there was a substantial likelihood that permitting the Individual Defendants to carry on their regular duties as Corrections Officers would deprive the inmates of their civil rights but failed to take adequate measures to resolve the wrong.

114.    In fact, upon hearing the allegations, Defendants COUNTY and LAROCCO still failed to take any action and failed to terminate the Individual Defendants' employment or title as Corrections Officers, essentially countenancing this behavior throughout NCCC.

115.    LAROCCO and other NCSD and NCCC supervisors' failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed as officers with COUNTY, gross negligence in their supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by

19

the Individual Defendants and other Corrections Officers, subjects them to supervisory liability for the December 21, 2024 and January 11, 2025 assaults and batteries of Plaintiff.

116.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT V**
**DENIAL AND FAILURE TO PROVIDE MEDICAL TREATMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS**
***(Against Defendants ROMANO, #1640, and DOES)***

117.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

118.    Defendants had an affirmative duty to provide and administer health and medical services to Plaintiff and other NCCC pre-trial detainees.

119.    Defendants, as previously alleged, had a duty and obligation to provide Plaintiff and other NCCC pre-trial detainees reasonable and adequate health and medical services.

120.    Defendants, on information, had knowledge that the health care they provided and/or were responsible for providing to Plaintiff and other NCCC pre-trial detainees was deficient, inadequate, and incompetent.

20

121. On information, the health and medical care provided by Defendants, or which they were responsible for providing to Plaintiff, failed to meet an acceptable standard of treatment and care in terms of modern medicine, technology, and current beliefs about human decency.

122. On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiff, and the harm to which Plaintiff was exposed was sufficiently serious as to implicate his Constitutional rights.

123. On information, Defendants knew that Plaintiff's medical condition constituted a serious need for competent and adequate medical care and treatment.

124. On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiff's health.

125. The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, and/or death were likely.

126. Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiff.

127. Defendants were deliberately indifferent to the serious medical needs of Plaintiff.

128. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering.

129. Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiff.

130. As a direct and proximate result of the foregoing, Plaintiff was subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

131.   As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### COUNT VI
### MONELL
### *(Against Defendants COUNTY and LAROCCO)*

132.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

133.   Upon information and belief, it was the custom, policy, and practice of COUNTY and LAROCCO to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Corrections Officers.

134.   Employees of COUNTY and LAROCCO, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

135.    Employees of COUNTY and LAROCCO, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

136.    By failing to supervise, train, and reprimand such Corrections Officers, COUNTY and LAROCCO caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

137.    By maintaining a *de facto* policy of automatic indemnification, COUNTY and LAROCCO caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

138.    Upon information and belief, it was the custom, policy, and practice of COUNTY and LAROCCO to blatantly ignore complaints and/or widespread allegations of assault, battery, and/or other malfeasance against inmates by the Corrections Officers in order to shield COUNTY and LAROCCO from receiving any bad press that would be generated from an investigation of misconduct by the Corrections Officers.

139.    Upon information and belief, this custom, policy, and practice of COUNTY and LAROCCO to ignore complaints and/or widespread allegations of assault, battery, and other malfeasance against inmates by the Corrections Officers created an environment where foreseeable Constitutional violations by the Corrections Officers were rampant, including the violations of Plaintiff's Constitutional rights by the Individual Defendants.

140.    COUNTY and LAROCCO's failure to take action against the Individual Defendants involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

141.    As authorized representatives of Defendants COUNTY and LAROCCO, the Corrections Officers' conduct of threats of violence and acts of assault and battery, such as against Plaintiff, constituted a custom, policy, and practice which renders Defendants COUNTY and LAROCCO liable to Plaintiff as a "Person" acting under the color of state law.

142.    These customs, policies, and practices, which were enforced by Defendants COUNTY and LAROCCO, were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

143.    Had COUNTY and/or LAROCCO investigated serious complaints of assault and/or widespread allegations of same prior to December 21, 2024 or January 11, 2025, the Individual Defendants would not have been in a position to violate Plaintiff's Constitutional rights.

144.    COUNTY and LAROCCO are therefore liable for violations of Plaintiff's Constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

145.    That, by virtue of COUNTY and LAROCCO's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed as officers with NCCC, gross negligence in their supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by the Individual Defendants, Defendants COUNTY and LAROCCO, which employed these Corrections Officers

24

and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

146.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees.

## COUNT VII
## ASSAULT (PENDENT)
### (*Against All Defendants*)

147.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

148.    The Individual Defendants' physical abuse of Plaintiff was entirely unjustified and constitutes an intentional assault upon Plaintiff.

149.    The Individual Defendants, by their conduct, placed Plaintiff in fear of imminent harm and offensive conduct.

150.    As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression,

fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages as against the Individual Defendants.

**COUNT IX**
**BATTERY (PENDENT)**
**(*Against All Defendants*)**

151.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

152.    Battery is the intentional, wrongful physical contact with another person without consent.

153.    Defendants ROMANO, #1640, and DOES' intentional physical abuse of Plaintiff was entirely unjustified, done without Plaintiff's consent, and constituted a battery upon Plaintiff.

154.    As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages as against the Individual Defendants.

## COUNT IX
## NEGLIGENT/GROSS NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION (PENDENT)
### (*Against Defendants COUNTY and LAROCCO*)

155.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

156.    Defendants knew, or were negligent in not knowing, that ROMANO, #1640, and DOES posed a threat of abuse to vulnerable inmates, including Plaintiff.

157.    Defendants COUNTY and LAROCCO, by and through their agents, servants, and/or employees, had actual knowledge, knew, or reasonably should have known of the Individual Defendants' dangerous and violent propensities and/or that the Individual Defendants were unfit agents due to their violent propensities and prior instances of official misconduct.

158.    Defendants COUNTY and LAROCCO, by and through their agents, servants, and/or employees, failed to implement the proper programs and/or internal guidelines and regulations to adequately screen violent and/or abuse prone officers before they are allowed to continue to perform their full duties as Corrections Officers, after receiving knowledge of prior instances of misconduct.

159.    The acts of ROMANO, #1640, and DOES described hereinabove were undertaken, and/or enabled by, and/or during the course, and/or within the scope of their employment, appointment, and/or agency with NCCC.

160.    Defendants COUNTY and LAROCCO owed Plaintiff a duty to protect him from the Individual Defendants' violent tendencies and/or to implement the proper programs and/or internal guidelines and regulations to adequately screen Corrections Officers who are prone to

27

violence and/or other forms of abuse before allowing them to continue to perform their full duties as Corrections Officers.

161. The countenancing of this behavior created an environment within NCCC wherein the Corrections Officers were allowed to continue with their violent behavior, without ever facing an investigation into same or fearing any repercussions for their malfeasance, which led to the Constitutional rights of vulnerable inmates being violated for their violent desires.

162. Defendants COUNTY and LAROCCO's grossly negligent and/or negligent acts of commission and/or omission directly and/or proximately caused the damages set forth herein at length.

163. In fact, upon hearing of the allegations, Defendants COUNTY and LAROCCO still failed to take any action and failed to terminate the Individual Defendants' employment or title as a Corrections Officer, essentially countenancing this behavior throughout NCCC.

164. As a proximate result of Defendants' reckless, grossly negligent, negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## COUNT X
## NEGLIGENCE(PENDENT)
### (*Against All Defendants*)

165.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

166.    That upon information and belief, at all times herein mentioned, Defendant COUNTY was the owner of the premises located at NCCC, 100 Carman Avenue, East Meadow, State of New York.

167.    That upon information and belief, at all times herein mentioned, Defendant COUNTY, through its agents, servants, employees, and/or assigns, owned, operated, managed, maintained, possessed, supervised, and controlled the premises located at NCCC, 100 Carman Avenue, East Meadow, State of New York.

168.    On or about January 11, 2025, while Plaintiff was an inmate at the location known at NCCC, 100 Carman Avenue, East Meadow, State of New York, he was caused to be negligently, wrongfully, and with gross negligence and complete disregard for Plaintiff's safety, physically detained, assaulted, beaten, and battered by another inmate(s) and was caused to sustain severe and permanent injuries.

169.    On or about January 11, 2025, Defendant COUNTY was obligated and owed a duty to Plaintiff to maintain, manage, operate, and control the aforesaid premises, the inmates and activities conducted therein, in a reasonably safe and prudent manner.

170.    That Plaintiff sustained the aforesaid injuries wholly and solely due to the negligence of Defendant COUNTY, its agents, servants, and/or employees without Plaintiff in any way contributing thereto.

171.    On or about January 11, 2025, Defendant COUNTY, its agents, servants, and/or employees, jointly and severally, individually or in concert, disregarded their duty and conducted themselves in a negligent, reckless, careless, and unlawful manner in failing to provide adequate and sufficient security to protect Plaintiff within NCCC; in failing to have properly trained Corrections Officers or other security personnel; in failing to have properly trained Corrections Officers or other security personnel in sufficient numbers; in having Corrections Officers or other security personnel who were improperly trained or supervised; in failing to timely identify and promptly eject violent inmates; in permitting violent inmates to enter and remain within the correctional facility; in permitting violent inmates to engage in dangerous and hazardous activities within the correctional facility; in failing to discern within a reasonable time that violent inmates were engaged in dangerous and hazardous activities within the correctional facility; in permitting other inmates to have weapons; in placing Plaintiff in danger; in failing to warn Plaintiff of the dangerous and hazardous activities being conducted within the correctional facility; in failing to timely provide Plaintiff with proper medical treatment; in denying proper medical treatment after the incident; in confining Plaintiff to an overcrowded and small cell with multiple inmates; in not abiding by health and safety guidelines; and in conducting themselves in such a negligent, reckless, careless, and unlawful manner as to cause severe injuries to Plaintiff.

172.    That by reason of the wrongful, negligent, and unlawful actions of Defendant COUNTY, through its agents, servants, and/or employees as aforesaid, Plaintiff was severely injured, bruised, and wounded, suffered, still suffers, and will continue to suffer for some time great physical pain and great bodily injuries and became sick, sore, lame, and disabled and so remained for a considerable period of time.

173.    That solely as a result of the foregoing, Plaintiff has incurred hospital and medical

expenses.

174. That the limitations set forth in Article 16 of the CPLR do not apply to this action, since one or more of the exceptions apply.

175. As a proximate result of Defendants' negligent, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## JURY DEMAND

176. Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ERIC WILLIE respectfully requests judgment against Defendants COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONS OFFICER ROMANO, in his individual and official capacities, NASSAU COUNTY CORRECTIONS OFFICER #1640, in his individual and official capacities, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, and CORRECTIONS

OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, as follows:

A.     Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

B.     Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C.     Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D.     Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

E.     Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

F.     Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

G.     Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages;

H.     Under the Eighth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages;

I.     Under the Ninth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

J.     Under the Tenth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

K.      Costs and disbursements of this matter; and

L.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
        March 20, 2026

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:    */s/Sheetal Paul*
        Sheetal Paul, Esq.
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        shp@hornwright.com